**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40892**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 560 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 11, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DAVID JAMES McPEAK, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction and unified consecutive sentences of ten years, with seven years determinate, for burglary and an indeterminate term of seven years for possession of controlled substances, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

David James McPeak appeals from his conviction for burglary and possession of controlled substances. He argues the district court erred in denying his motion to suppress and that it abused its discretion by imposing excessive sentences.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Shortly before midnight, an officer received a call reporting that an alleged assault involving a knife had recently occurred. It was reported that the suspect was McPeak, and that he had entered the home of the caller and left in a white Ford pickup. Shortly thereafter, the officer saw a white Ford pickup in the vicinity and pulled behind it to obtain license plate information. At that time, the vehicle slowed to a pace of fifteen miles per hour in a thirty-five mile-per-hour zone, made an abrupt right turn without signaling, and stopped on the side of the

1

road. The officer pulled over and noticed the occupants of the vehicle were moving around, he then activated his lights. After additional officers arrived and the occupants were removed from the vehicle, the driver was identified as McPeak. The officers saw several knives and smelled marijuana when they approached the vehicle, and upon a subsequent search they found methamphetamine.

McPeak was charged with burglary, possession of controlled substances (marijuana and methamphetamine), and aggravated assault for the alleged incident which prompted the 911 call. McPeak sought suppression of all evidence relating to the traffic stop, asserting the stop of his vehicle was illegal. The district court denied the motion to suppress. A jury found McPeak guilty of burglary and possession of controlled substances, but not guilty of the aggravated assault.

The court sentenced McPeak to a unified term of ten years, with seven years determinate for the burglary, and an indeterminate term of seven years for possession of methamphetamine, ordering the sentences to run consecutively. The court retained jurisdiction. The court also ordered McPeak to serve one hundred eighty days in jail for possession of marijuana, with credit for time served. McPeak timely appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

McPeak claims that the district court erred in denying his motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the

Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

McPeak contends that the officer lacked a reasonable and articulable suspicion supporting the stop of his vehicle. McPeak argues his case is similar to *State v. Zapata-Reyes*, 144 Idaho 703, 169 P.3d 291 (Ct. App. 2007) and *State v. Morgan*, 154 Idaho 109, 294 P.3d 1121 (2013), both of which involved denials of motions to suppress that were reversed on appeal. However, both of these cases are distinguishable from the current facts.

In *Zapata-Reyes*, a caller notified the police that his house may have been shot at by people in a white "Corsica, or Buick like, a Pontiac" that had driven by his home twice that evening, although he did not specify when it had last occurred. *Zapata-Reyes*, 144 Idaho at 705, 169 P.3d at 293. Thereafter, an officer spotted a white Oldsmobile passenger car approximately one block from the caller's residence, which he began to follow and stopped behind when the car pulled into a parking lot, and the officer illuminated his spotlight. *Id*. On appeal, this Court reversed the district court's order denying Zapata-Reyes' motion to suppress holding that the totality of the circumstances did not provide reasonable and articulable suspicion that he had committed or was going to commit a crime. *Id*. at 709, 169 P.3d at 297. The Court based this finding on the fact that the caller did not indicate how much time had passed since the last time the car had driven by his home; the caller described a car of common color and did not provide any other significant distinguishing characteristics to help identify the car; no evidence was presented to show whether the Oldsmobile Zapata-Reyes was in resembled a Corsica or Buick;

3

and the caller stated there were three or four people in the car, not two. *Id*. at 708-09, 169 P.3d at 296-97.

In *Morgan*, an officer conducted a traffic stop based primarily on his suspicion that the driver was trying to avoid him by making four left-hand turns. *Morgan*, 154 Idaho at 112, 294 P.3d at 1124. On appeal, the Idaho Supreme Court reversed the order denying Morgan's motion to suppress, noting, "Although the officer stated that he believed Morgan may have been trying to avoid him, the officer provided no factual justification for that belief. Absent other circumstances, driving around the block on a Friday night does not rise to the level of specific, articulable facts that justify an investigatory stop." *Id*. at 112, 294 P.3d at 1124.

McPeak cites both of these cases as support; however, they are distinguishable from the present facts. Given the totality of the circumstances, the officer had reasonable suspicion to conduct the stop. The caller in *Zapata-Reyes* described the car as possibly three different kinds of passenger cars, none of which were what the officers later spotted and targeted. Unlike the facts in *Zapata-Reyes*, the caller in this case gave a more particular description of the automobile, specifically a white Ford pickup, and the caller told police the driver was involved in an assault involving a knife and unambiguously identified the suspect as McPeak. Additionally, the call was made shortly after the alleged assault occurred, as opposed to *Zapata-Reyes* where the caller did not state at what time the car had driven by his home. Likewise, these facts are also distinguishable from *Morgan* because this case involves more suspicious driving behavior than making a series of left-hand turns, specifically driving fifteen miles per hour in a thirty-five mile-per-hour zone, turning without a signal, and pulling over to the side of the road when the officer began to follow the Ford pickup. Furthermore, the officer stated he observed the occupants "shifting around . . . . Possibly stuffing things, moving things around."

A recent United States Supreme Court case further supports a finding that the officer had reasonable suspicion to conduct the stop. *See Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683 (2014). In that case an anonymous caller reported having been run off the road approximately five minutes prior, and identified the automobile by type and license plate. *Id*. at ___, 134 S. Ct. at 1686-87. Thereafter, an officer spotted the vehicle and pulled it over. *Id*. at ___, 134 S. Ct. at 1687. The defendants filed motions to suppress asserting the stop violated the Fourth Amendment because the officers lacked reasonable suspicion that criminal activity was afoot, the denial of which was affirmed on appeal by the California Courts of Appeal and the

4

United States Supreme Court. *Id.* In finding that it was reasonable under the circumstances for the officer to execute a traffic stop, the United States Supreme Court noted that while the caller was anonymous, she had eyewitness knowledge of the driver, gave a detailed description of the automobile, made the call shortly after the incident occurred, and used the 911 emergency system. *Id.* at ___, 134 S. Ct. at 1689. The Court also noted that it has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).

Similarly, the caller in this case used the 911 emergency system, the caller had eyewitness knowledge of criminal activity, and the call was made shortly after the incident. However, while the license plate number was not provided in this case, a sufficiently specific description of the automobile was provided. The caller here was not anonymous and specifically identified the driver of the truck as McPeak. McPeak argues that fidgeting in the vehicle after it stopped is not determinative that the occupants were involved in an assault. The district court noted the driving behavior and stated, "and then there was all sorts of movement inside the pickup which is all indicative of maybe there's criminal activity afoot." Accordingly, the district court properly found that under the totality of the circumstances, there was reasonable and articulable suspicion that validated the traffic stop; thus, the district court did not err in denying McPeak's motion to suppress.

**B.      Excessive Sentences**

McPeak asserts that the district court erred by imposing excessive sentences for burglary and possession of controlled substances. He supports his argument by noting he apologized to the woman he allegedly assaulted, acknowledged he has anger management issues, and admitted he should not have entered the victim's home.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence,

rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion. The district court emphasized its concern with McPeak's anger issues and its doubt that he was able to control his temper. It also noted that it was going to have McPeak evaluated by the department of correction staff and that they could decide the appropriate programming for McPeak, and if he successfully completed the programming, the court would consider probation. The court's sentences clearly demonstrate its focus on the primary objective of protecting society and were not an abuse of discretion. Accordingly his sentences are affirmed.

## III.

## CONCLUSION

McPeak has failed to demonstrate the district court erred in denying his motion to suppress or that it abused its discretion by imposing excessive sentences. Accordingly, we affirm McPeak's judgment of conviction and sentences.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**